UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and ARTHUR H. BUNTE, Jr., Trustee,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>EHLERS DIST. INC., an Iowa corporation, KEVIN EHLERS, and TERRY EHLERS,<br><br>　　　　　　　　　　Defendants. | 11 C 2691<br><br>Judge Feinerman |

**MEMORANDUM OPINION AND ORDER**

Central States, Southeast and Southwest Areas Pension Fund and one of its trustees allege in this lawsuit that Ehlers Dist., Inc., Kevin Ehlers, and Terry Ehlers (collectively, "Ehlers") are liable under the Employment Retirement Income Security Act ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"), 29 U.S.C. § 1001 *et seq.*, and federal common law for non-party The Dairy Trust Company's liability for withdrawing from the Fund. The gist of the complaint is as follows: Dairy Trust effected a complete withdrawal from the Fund, which is a multiemployer pension plan, and failed to make the required withdrawal payments; the Fund filed suit against Dairy Trust and obtained a judgment in the amount of $293,723.07, *see Cent. States, Se. & Sw. Areas Pension Fund v. The Dairy Trust Co.*, 09 C 7657, Doc. 31 (N.D. Ill. June 16, 2010) (St. Eve, J.); the full amount of the judgment remains due and owing; Kevin and Terry Ehlers, the owners of Dairy Trust, caused Dairy Trust to sell substantially all of its assets to Ehlers Dist., after which Ehlers Dist. completely took over Dairy Trust's business activities, with the same address, telephone number,

and management. As a result, the complaint alleges, Kevin Ehlers, Terry Ehlers, and Ehlers Dist. are liable under a variety of statutory and common law theories for Dairy Trust's withdrawal liability.

Ehlers is located in Dubuque, Iowa, which is part of the Northern District of Iowa and located just across the Mississippi River from the northeastern tip of Illinois. The Fund is administered in Rosemont, Illinois, which is located in the Eastern Division of the Northern District of Illinois. Ehlers moved under 28 U.S.C. § 1404(a) to transfer this case to the Northern District of Iowa. Doc. 16. The court denied the motion in a minute order. Doc. 22. This memorandum opinion and order articulates the grounds for denying the motion.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The moving party bears the burden of demonstrating that a transfer is warranted. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1293 (7th Cir. 1989). Transfer under § 1404(a) is appropriate if "(1) venue is proper in both the transferor and transferee court; (2) transfer is for the convenience of the parties and witnesses; and (3) transfer is in the interest of justice." *Law Bulletin Publ'g, Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998); *see also Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977-78 (7th Cir. 2010). The parties agree that venue is proper in both the Northern District of Illinois, where the Fund is administered, and the Northern District of Iowa, where Ehlers is located. *See* 29 U.S.C. § 1132(e)(2) ("Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found … ."); *id*. § 1451(d) ("An action under this section may be brought in

the district where the plan is administered or where a defendant resides or does business … ."). Resolution of Ehlers's motion therefore turns on considerations of convenience and the interest of justice.

The convenience analysis is governed by these factors: (1) the plaintiff's choice of forum; (2) the situs of the material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience of the parties. *See Law Bulletin Publ'g*, 992 F. Supp. at 1017. Regarding the first factor, "[i]n an ERISA case such as this, the plaintiff's choice of venue is given substantial deference, and the court will not disturb it unless it is clearly outweighed by other factors." *Cent. States, Se. & Sw. Areas Pension Fund v. Davidson*, 2007 WL 722889, at *1 (N.D. Ill. Mar. 8, 2007) (citing *Cent. States, Se. & Sw. Areas Pension Fund v. Lewis & Michael, Inc.*, 992 F. Supp. 1046, 1048 (N.D. Ill. 1998)). In expressly allowing multiemployer pension funds to bring enforcement actions in the judicial district where they are administered, Congress "sought to protect the integrity of benefit plans by encouraging them to proceed in a manner that most efficiently collects delinquent contributions. Because the expense of a contribution enforcement action is passed to the beneficiaries of the pension plan, it would be counterproductive to require the plans to prosecute their cases in the foreign districts where the contributing employers reside." *Lewis & Michael*, 992 F. Supp. at 1049 (internal quotation marks and citation omitted). Accordingly, the Fund's choice to proceed in this District will not be disturbed unless its choice "is clearly outweighed by other factors." *Trs. of Hotel Emps. & Rest. Emps. Int'l Union Welfare Pension Fund v. Amivest Corp.*, 733 F. Supp. 1180, 1182-83 (N.D. Ill. 1990).

The second convenience factor, the situs of material events, weighs slightly in favor of transfer. As noted above, this case primarily concerns the alleged transfer of assets from Dairy

Trust to Ehlers Dist., actions that apparently occurred in the Northern District of Iowa. As the Fund points out, however, this District was where the Fund determined that Terry and Kevin Ehlers attempted to evade Dairy Trust's withdrawal liability by causing its assets to be transferred to Ehlers Dist. Relevant events therefore took place in both Districts, though the underlying events occurred in Iowa.

The third convenience factor, the location of the material evidence, has no weight. Although Dairy Trust's and Ehlers's files apparently are located in the Norther District of Iowa, this is "a neutral factor" because "documents are easily transferrable" from one district to another. *Handler v. Kenneth Allen & Assocs., P.C.*, 2011 WL 1118499, at *3 (N.D. Ill. Mar. 24, 2011) (citation omitted); *see also Nero v. Am. Family Mut. Ins. Co.*, 2011 WL 2938138, at *3 (N.D. Ill. July 19, 2011); *Morris v. Am. Biosci., Inc.*, 2004 WL 2496496, at *3 (N.D. Ill. Nov. 3, 2004) (the "location of pertinent documents does not militate for or against transfer" because of the "ready availability of photocopying and the relative ease with which documents may be selectively shipped around the country") (internal quotation marks and citation omitted).

The fourth factor, the location and convenience of witnesses, is essentially neutral. Ehlers contends that non-party witnesses located in the Northern District of Iowa, including its outside accountant, would be inconvenienced by traveling to Chicago for trial. This consideration deserves minimal weight. As an initial matter, ERISA and MPPAA enforcement cases are very rarely tried. Moreover, if the case is tried, the non-party witnesses identified by Ehlers would be beyond the court's subpoena power, so they could be deposed where they are located and their depositions could be read or shown (if taken by video) at trial. And if Ehlers would prefer to present live testimony from those witnesses, there is no indication that they would be reluctant to travel to Chicago. *See Cent. States, Se. & Sw. Areas Pension Fund v.*

*LaCasse*, 254 F. Supp. 2d 1069, 1073 (N.D. Ill. 2003) (discounting concerns about compulsory process over non-party witnesses where defendants "provided no indication that these witnesses will be hostile or reluctant"); *Lewis & Michael*, 992 F. Supp. at 1048 ("while defendant points out that its witnesses are beyond compulsory process, there is no particular reason to believe that they will be uncooperative").

The fifth factor, the convenience of the parties, is essentially neutral as well. Ehlers's counsel, whose office is in Silvis, about 85 miles south of Dubuque on the Illinois side of the Mississippi River, is welcome to attend status and motion hearings by telephone. Ehlers maintains that the resource disparity between the parties—a large multiemployer pension fund versus a small business—favors transfer. But Ehlers has not identified any significant financial burden that would be imposed by litigating in this District. By contrast, forcing the Fund to litigate outside its home District would "increase [its] litigation costs, dilute its pension assets and encourage employers to employ § 1404(a) as a means of evading their obligation to the fund." *Cent. States, Se. & Sw. Areas Pension Fund v. White*, 1999 WL 447059, at *2 (N.D. Ill. June 25, 1999).

The convenience factors, considered together, strongly favor the Northern District of Illinois given the substantial deference owed the Fund's choice of forum and the fact that transfer to the Northern District of Iowa "would merely shift the inconvenience from one party to another." *White*, 1999 WL 447059, at *2 (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986)). The interest of justice factors do not tip the scales in Ehlers's favor in the slightest, let alone to the extent necessary to justify a transfer. "The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system. For this element, courts look to factors including docket congestion and likely speed to

trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Research Automation*, 626 F.3d at 978 (internal quotation marks and citations omitted).

The docket congestion factor is a wash. Ehlers notes that the Northern District of Illinois's caseload dwarfs the Northern District of Iowa's (8296 cases to 879), but the Fund correctly responds that this District has many more judges, leaving the per-judge caseload only slightly higher here (244 cases per judge) than there (220 cases per judge). Ehlers also observes that there are more cases pending for more than three years in this District than in the Iowa court. But this statistic is meaningless, as ERISA and MPPAA enforcement cases almost always are resolved quickly. The second factor, familiarity with relevant law, also is a wash. The ERISA and MPPAA principles at issue in this case are federal, leaving both courts fully capable of resolving the legal issues presented by the Fund's suit.

The third and fourth interest of justice factors—the desirability of resolving controversies in each locale, and the relation of each community to the controversy—are neutral as well. Ehlers is located in the Northern District of Iowa. However, the Fund is located in the Northern District of Illinois, and "the interest of justice favors simplifying the collection of withdrawal liability by administrators of pension funds." *Cent. States, Se. & Sw. Areas Pension Fund v. Gelock Transfer Line, Inc.*, 1991 WL 36919, at *3 (N.D. Ill. Feb. 26, 1991). For the reasons discussed above, litigation in this District would simplify the Fund's collection efforts, thereby advancing Congress's goal to protect pensioners and participants in multiemployer pension funds.

In sum, Ehlers has not shown that the Fund's choice of forum is "clearly outweighed" by the other relevant factors. *Amivest Corp.*, 733 F. Supp. at 1183. Ehlers's motion to transfer therefore is denied.

February 22, 2012

_____
United States District Judge