UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, and ARTHUR H. BUNTE, JR., Trustee, | ) ) ) ) | 11 C 2691 |
| Plaintiffs, | ) ) | Judge Feinerman |
| vs. | ) ) | |
| EHLERS DIST., INC., an Iowa corporation, KEVIN EHLERS, and TERRY EHLERS, | ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In 2008, The Dairy Trust Co. withdrew from the Central States, Southeast and Southwest Areas Pension Fund, a multiemployer pension plan. The Pension Fund sued Dairy Trust in *Central States, Southeast & Southwest Areas Pension Fund v. The Dairy Trust Co.*, 09 C 7657 (N.D. Ill. filed Dec. 10, 2009), to recover Dairy Trust's proportionate share of the Pension Fund's unfunded vested benefits, an amount referred to as "withdrawal liability" under the Multiemployer Pension Plan Amendments Act ("MPPAA"), 29 U.S.C. § 1381 *et seq*. The court entered judgement for the Pension Fund in the amount of $293,723.07, of which $226,972.52 constituted withdrawal liability. *Dairy Trust*, 09 C 7657, Doc. 31 (June 16, 2010) (St. Eve, J.).

Dairy Trust never satisfied the judgment. The Pension Fund (and its trustee, who for simplicity's sake will be ignored) brought this suit against Ehlers Dist., Inc. and two individuals, Kevin Ehlers and Terry Ehlers, to recover the withdrawal liability owed by Dairy Trust. The Pension Fund alleges that Ehlers Dist. is the successor to Dairy Trust, that Dairy Trust sold its

assets to Ehlers Dist. in order to evade its withdrawal liability from the earlier suit, and that Dairy Trust and Ehlers Dist. distributed funds to Kevin and Terry for the same reason.

The Pension Fund has moved for summary judgment. Doc. 29. While the motion was pending, Kevin and Terry sought Chapter 7 bankruptcy protection. *See In re Kevin Edward Ehlers*, 2:12-bk-01105 (N.D. Iowa. Bankr. filed June 1, 2012); *In re Terry Lee Ehlers*, 2:12-bk-01091 (N.D. Iowa Bankr. filed May 31, 2012);. The Pension Fund acknowledges that the proceedings against Kevin and Terry must be stayed under 11 U.S.C. § 362(a)(1). Doc. 32 at 2. The case will proceed against Ehlers Dist.

Ehlers Dist. filed no Local Rule 56.1(b)(3)(B) response to the Pension Fund's Local Rule 56.1(a)(3) statement of facts, so the facts set forth in the Pension Fund's statement are deemed admitted. *See* N.D. Ill. L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880-81, 884-85 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009); *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006); *Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 943-44 (7th Cir. 2005); *Koszola v. Bd. of Educ. of City of Chi.*, 385 F.3d 1104, 1109 (7th Cir. 2004); *Smith v. Lamz*, 321 F.3d 680, 682-83 (7th Cir. 2003). The pertinent facts are as follows. Ehlers Dist. and Dairy Trust had the same owners and officers: Kevin was President, Terry was Secretary, and each held a 50% ownership interest. Doc. 31 at ¶¶ 9-12, 29. While the prior suit was pending against Dairy Trust, Kevin and Terry formed Ehlers Dist. and caused Dairy Trust to transfer substantially all of its assets to Ehlers Dist. for $67,016.93. *Id*. at ¶¶ 22-23. Ehlers Dist. was aware of Dairy Trust's withdrawal

liability at the time of the transfer. *Id.* at ¶ 24. Despite the transfer, the business carried on without change: Ehlers Dist. assumed Dairy Trust's business, conducted the same type of business (the delivery of fluid dairy products), operated from the same location, employed the same individuals, used the same delivery trucks, served substantially the same customers, used the same suppliers and on the same contractual terms, relied on the same professional advisors, and used the same vendors. *Id.* at ¶¶ 26-35.

Ehlers Dist. filed no brief in opposition to the Pension Fund's summary judgment motion. This failure to respond "does not … automatically result in judgment for" the Pension Fund, which "must still demonstrate that it is entitled to judgment as a matter of law." *Keeton*, 667 F.3d at 884 (internal quotation marks omitted). The Pension Fund invokes two legal theories against Ehlers Dist.: successor liability, and engaging in a transaction with the principal purpose of evading or avoiding Dairy Trust's withdrawal liability, *see* 29 U.S.C. § 1392(c). Because the Pension Fund prevails under successor liability, there is no need to address the other ground.

Successor liability is an equitable doctrine that "provides an exception from the general rule that a purchaser of assets does not acquire a seller's liabilities." *Chi. Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. Tasemkin, Inc.*, 59 F.3d 48, 49 (7th Cir. 1995). "[U]nder federal common law[,] … in order to protect federal rights or effectuate federal policies, this theory allows lawsuits against even a genuinely distinct purchaser of a business if (1) the successor had notice of the claim before the acquisition; and (2) there was substantial continuity in the operation of the business before and after the sale." *Ibid.* (internal quotation marks omitted); *see also Feinberg v. RM Acquisition, LLC*, 629 F.3d 671, 674 (7th Cir. 2011); *Moriarty v. Svec*, 164 F.3d 323, 327 (7th Cir. 1998); *EEOC v. G-K-G, Inc.*, 39 F.3d 740, 747-48

(7th Cir. 1994); *Upholsterers' Int'l Union Pension Fund v. Artistic Furniture of Pontiac*, 920 F.2d 1323, 1329 (7th Cir. 1990). Summary judgment is appropriate on the Pension Fund's successor liability theory given the undisputed facts—specifically, the fact that Ehlers Dist. had notice of Dairy Trust's withdrawal liability when purchasing Dairy Trust's assets, and the facts pertaining to the continuity of the two entities' business operations. *See ibid*. (the continuity of business operations was established where two companies had the same management and work force, used the same location and equipment, manufactured the same products, and serviced the same customers); *Sullivan v. Alpine Irrigation Co.*, 2011 WL 5599504, at *2 (N.D. Ill. Nov. 14, 2011) (citing cases finding continuity of business operations on similar facts).

In addition to recovering the amount of Dairy Trust's withdrawal liability, the Pension Fund seeks interest, liquidated damages, attorney fees, and costs pursuant to 29 U.S.C. § 1132(g)(2). Section 1451(b) of Title 29 provides: "In any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title)." 29 U.S.C. § 1451(b). Section 1132(g)(2) of Title 29, in turn, dictates mandatory remedies for pension funds that succeed in recovering delinquent contributions under § 1145:

> In any action under this subchapter … to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan—
>
>     (A) the unpaid contributions,
>
>     (B) interest on the unpaid contributions,
>
>     (C) an amount equal to the greater of—

>> (i) interest on the unpaid contributions, or
>
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
>
> (E) such other legal or equitable relief as the court deems appropriate.

*Id*. § 1132(g)(2). Considered together, these provisions mandate the award of § 1132(g)(2) remedies to a pension fund that successfully sues to recover withdrawal liability. *See Cent. States, Se. & Sw. Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1377 (7th Cir. 1992).

A possible wrinkle arises here because § 1451(b) requires that the action be brought against an "employer." 29 U.S.C. § 1451(b). The MPPAA does not expressly define "employer," but all courts addressing the issue have defined the term to mean "a person who is *obligated to contribute* to a plan either as a direct employer or in the interest of an employer of the plan's participants." *Resilient Floor Covering Pension Fund v. M&M Installation, Inc.*, 630 F.3d 848, 851-52 (9th Cir. 2010) (emphasis added) (collecting cases); *see also Cent. States, Se. & Sw. Areas Pension Fund v. Int'l Comfort Prods., LLC*, 585 F.3d 281, 284 (6th Cir. 2009) (same). Ehlers Dist. might not be an "employer" under that definition because it had no obligation to contribute to the Pension Fund; the Pension Fund affirmatively states that Ehlers Dist. was not a signatory to any collective bargaining agreement. Doc. 31 at ¶ 37. And if § 1451(b) does not apply to Ehlers Dist. because it is not an "employer," there might be no direct statutory route to the imposition of § 1132(g)(2) remedies against Ehlers Dist. in this case.

There is no need to run this issue to ground because the mandatory remedies set forth in § 1132(g)(2) are appropriate under the successor liability doctrine. As noted above, successor liability is an equitable doctrine that exists "to protect federal rights or effectuate federal policies." *Tasemkin*, 59 F.3d at 49. One such federal policy is that liquidated damages, interest, attorney fees, and costs be awarded to a pension fund that successfully sues to collect withdrawal liability to compensate the fund for the delay in collecting and the cost of bringing suit. *See Cent. States, Se. & Sw. Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1156 (7th Cir. 1989) (en banc) ("Liquidated damages compensate the plans for delay and give employers an incentive to be forthcoming with payments."); *Cent. Pa. Teamsters Pension Fund v. Bear Distrib. Co.*, 2009 WL 812224, at *11 (E.D. Pa. Mar. 26, 2009) ("[Section 1132(g)(2) [was] enacted because of Congress' concern over costs incurred by multiemployer plans, such as lost revenue and collection and litigation expenses, as a result of employer delinquencies."); *see also Artistic Furniture*, 920 F.2d at 1327-29 ("The congressional policies underlying … the [MPPAA] are no less important, and no less compel the imposition of successor liability than do the policies animating the NLRA, Title VII, or Section 1981 in the cases previously discussed."). To effectuate this policy, § 1132(g)(2) remedies must be made available in a suit to collect withdrawal liability from an entity that is a successor to an employer subject to withdrawal liability. This result accords with the practice of other courts that have presumed § 1132(g)(2) remedies to be available in these circumstances. *See Bear Distrib.*, 2009 WL 812224, at *1, 11; *Cent. States, Se. & Sw. Areas Pension Fund v. Hayes*, 789 F. Supp. 1430, 1432, 1437 (N.D. Ill. 1992).

For these reasons, the Pension Fund is entitled to summary judgment against Ehlers Dist. Ehlers Dist. is liable for Dairy Trust's unpaid withdrawal liability of $226,972.52. The Pension Fund shall file a memorandum and evidence by July 24, 2012, regarding the interest, liquidated damages, attorneys fees, and costs it seeks. Ehlers Dist. may respond by August 14, 2012, and if a response is filed, the Pension Fund may reply by August 28, 2012.

July 9, 2012                                          _____
                                                         United States District Judge